LAW OFFICE OF CARL M. VARADY

CARL M. VARADY
Pauahi Tower
1003 Bishop Street, Suite 1730
Honolulu, Hawaii 96813
Telephone: (808) 523-8447
Facsimile:   (808) 523-8448
e-mail: carl@varadylaw.com

Attorney for Plaintiff

IN THE UNITED STATE DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARK REYNOLDS,<br><br>    Plaintiff,<br><br>vs.<br><br>MERRILL LYNCH BASIC LONG TERM DISABILITY PLAN, MERRILL LYNCH SUPPLEMENTAL LONG TERM DISABILITY PLAN and MERRILL LYNCH & CO., INC,<br><br>    Defendants. | Civil No.<br><br>COMPLAINT; SUMMONS |

## **COMPLAINT**

Plaintiff, MARK REYNOLDS ("Plaintiff"), by and through his attorneys, CARL M. VARADY, for his complaint against Defendant, MERRILL LYNCH BASIC LONG TERM DISABILITY PLAN, MERRILL LYNCH

-2-

SUPPLEMENTAL LONG TERM DISABILITY PLAN and MERRILL LYNCH & CO., INC, ("Defendants") states the following:

### Jurisdiction and Venue

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA), and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f), under which the district courts have jurisdiction over civil actions brought to recover benefits due under the terms of an "employee welfare benefit plan." In this case, the employee welfare benefit plan consists of short and long term disability insurance plans purchased by Plaintiff and administered by Defendant Merrill Lynch & Co, Inc. In addition, this court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

2. The ERISA statute provides, at 29 U.S.C. § 1133, a mechanism for internal appeal of benefit denials. Those avenues of appeal have been exhausted.

3. Venue is proper in the district of Hawai'i pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391, as the plan is administered and/or the breach alleged occurred in this District.

### Nature of Action

4. This action is brought pursuant to 29 U.S.C. §1132(c) based on defendant's failure to timely supply requested documentation regarding the

-3-

employee benefit plan providing welfare benefits and disability insurance benefits to Merrill Lynch employees, including Plaintiff.

## The Parties

5. Plaintiff, MARK REYNOLDS ("Plaintiff")(dob 11/12/61) was a resident of Honolulu, Hawaiʻi, on the island of Oʻahu, when the events giving rise to this cause of action first occurred. The majority of the events, transactions, and occurrences relevant to Plaintiff's claim of disability took place within the District of Hawaiʻi.

6. Defendant, MERRILL LYNCH BASIC LONG TERM DISABILITY PLAN (the "Basic Plan") is an employee benefit plan providing welfare benefits and disability insurance benefits to Merrill Lynch's employees, including Plaintiff.

7. Defendant, MERRILL LYNCH SUPPLEMENTAL LONG TERM DISABILITY PLAN (the "Supplemental Plan") is an employee benefit plan providing welfare benefits and disability insurance benefits to Merrill Lynch's employees, including Plaintiff, who purchase such benefits in excess of the Basic Plan.

8. The Plan and Supplemental Plan shall be referred to herein collectively as the "Plans."

9. At all times relevant hereto, Defendants were doing business providing welfare benefits and disability insurance benefits throughout the United States and within the District of Hawai'i.

10. The Basic Plan and Supplemental Plan at all times relevant hereto, were doing business – providing welfare benefits and disability insurance benefits throughout the United States and within the District of Hawaii.

11. Defendant, MERRILL LYNCH & CO., INC., (hereafter "Plan Administrator") is the Plan Administrator for both the Basic and Supplemental Plans. At all times relevant hereto, Defendant Merrill Lynch was doing business throughout the United States and within the District of Hawaii.

12. At all times relevant hereto, the Basic and Supplemental Plans issued by Merrill Lynch under which Plaintiff was insured constituted an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1).

13. At all times relevant hereto, the Basic and Supplemental Plans constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1); and incident to his employment, Mr. Reynolds received coverage under the Plans as a "participant" as defined by 29 U.S.C. §1002(7). This claim relates to benefits under the foregoing Basic and Supplemental Plans.

## Statement of Facts

14. Plaintiff worked for Merrill Lynch for nearly 15 years as a high producing broker, until January 2004, when he became unable to work due to cervical and lumbar spondylosis, congenital lumbar and thoracic stenosis, as well as lumbar and cervical radiculopathies, thoracic outlet syndrome, lumbar arachnoiditis, and chronic neck and back pain.

15. In August 2001, Mr. Reynolds underwent his initial spinal surgery–an anterior cervical diskectomy, to relieve pressure on his cervical spinal cord.

16. In May 2002 and June 2002, Mr. Reynolds underwent two surgeries on his lumbar spine. The first surgery included: (1) decompressive laminectomy at L3, L4 and L5; and (2) diskectomy at L4-L5.

17. The second surgery was emergency surgery necessitated by complications arising from the first lumbar surgery, in which a portion of the disk became lodged against Mr. Reynolds's lower lumbar nerve roots, creating a synovial cyst. The cyst caused displacement of the dural sac and resulted in partial paralysis of Mr. Reynolds's right leg. Other residual pieces of disk left from the first lumbar surgery were debreided from various lumbar nerve roots.

18. His August 2004 MRIs detail that Mr. Reynolds continues to suffer from bulging disks that are impinging the thecal sac in both the cervical and lumbar areas of his spine.

19. As a result of his spinal disease Dr. Chong, Mr. Reynolds's neurosurgeon, noted on June 2, 2004, in his attending physician notes, that Mr. Reynolds is "unable to work." Mr. Reynolds' ability to work is unchanged.

20. Mr. Reynolds was treated for deep vein thrombosis in July 2004. As are result of the thrombosis, Mr. Reynolds continues to suffer from pain and swelling in the legs; severe back pain; insomnia and depression.

21. Mr. Reynolds is unable to work in his regular or any other occupation due to the symptoms related to these diagnoses and conditions.

22. Mr. Reynolds continues to suffer from chronic, intractable, incapacitating, neck and low back pain, a result of his conditions and surgeries, requiring continued prescriptions for narcotic medication and other drugs and has also resulted in clinical depression and cognitive deficits resulting from his pain and medical regime, including daily prescription of methadone for pain.

23. Subsequent to ceasing work, Plaintiff made a claim for benefits under the Basic and Supplemental Plans, stating that due to his condition, he was entitled to receipt of benefits based on meeting the requirement for sickness disability benefits. Plaintiff's claim for benefits was supported with

numerous medical records and reports, as well as other evidence, including objective medical evidence, certifying, and establishing his total disability from work and the conditions, diagnoses and treatments described herein.

24. Upon receipt of Plaintiff's claim, Merrill Lynch, the claims administrator Basic and Supplemental Plans, denied the claim.

25. Plaintiff timely appealed the denial of benefits on November 23, 2004, and supplemented his appeal on April 27, 2005. The appeal and supplementation identified errors in the review of records underlying the initial denial and provided extensive supplemental medical proof supporting Plaintiffs request for the disability benefits for which he had paid.

26. Mr. Reynolds was terminated by Merrill Lynch due to his inability to work on March 11, 2005.

27. Since the onset date of disability, Plaintiff has been continuously disabled, and he has been under the continuous care of treating physicians who have regularly confirmed his disability.

28. The determination by that Plaintiff is not disabled is contrary to the terms of the Basic and Supplemental Plans and has no rational support in the evidence.

29. Mr. Reynolds appealed the denial of benefits, which appeal was successful.

30. Mr. Reynolds first requested a copy of his plan of disability insurance from defendants in January 2004, and made repeated verbal requests afterward. Mr. Reynolds' attorney repeated this request this on December 8, 2004. Defendants are obligated by law to provide the copy.

31. Mr. Reynolds has repeated that request on several occasions since that time.

32. Mr. Reynolds cannot understand his benefits under the Basic and Supplemental Plans in effect in at the time he applied for disability without the Plans' documents.

33. Mr. Reynolds discovered an error in the method of calculating interest due on his benefits past due under the Basic and Supplemental Plans that superseded the 2004 Plans.

34. In August 2012, Mr. Reynolds discovered calculations of his basic and supplemental LTD are incorrect and had been wrongly calculated since July 12 2009.

35. Mr. Reynolds is terminally ill and must have his Basic and Supplemental Plans immediately to determine if he was properly paid under the Plans and what rights, if any, his survivors may have under the Plans.

36. To date, Mr. Reynolds has not received a copy of the requested 2004 Basic and Supplemental Plan documents.

-8-

37. Mr. Reynolds is entitled to relief pursuant to 29 U.S.C. §1132(c) based on defendant's failure to timely respond to Mr. Reynolds' request for documents

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court award penalties of $110/day from January 2004, through the date judgment is entered, pursuant to 29 U.S.C. §1132(c) based on defendant's failure to timely respond to plaintiff's request for documents;

B. That the Court award Plaintiff attorney's fees pursuant to 29 U.S.C. §1132(g); and

C. That plaintiff recover any and all other relief to which he may be entitled, as well as the costs of suit.

DATED: Honolulu, Hawai'i, March 31, 2015.

*/s/ Carl M. Varady*_____
CARL M. VARADY
Attorney for Plaintiff